IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN  DIVISION

| | |
|---|---|
| KINNIE  BEATY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 1:05-cv-00308-DRB |
| vs. | )   [wo] |
| | ) |
| JO ANNE B. BARNHART, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kinnie Beaty ("Beaty") appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his claim for disability benefits under Title II of the Social Security Act ("SSA") , 42 U.S.C. §§ 401 *et seq*., and  supplemental security income under Title XVI, 42 U.S.C. §§ 1381 *et seq.*  Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636 (c), and for reasons herein explained,  the court concludes that the Commissioner's decision should be affirmed.

### I.   STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.   The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II. PROCEDURAL HISTORY

Beaty filed an application for disability insurance benefits and supplemental security income, alleging May 31, 2002 as the onset date of disability. Denied administratively and represented by a non-attorney representative, Beaty received a requested hearing before an administrative law judge ("ALJ") on December 12, 2003. After providing Beaty time to secure additional medical records, the ALJ held a supplemental hearing on June 24, 2004. Because the Appeals Council rejected review, the ALJ's decision on August 12, 2004, became the final decision of the Commissioner.

Born April 6, 1959, Beaty has a tenth grade education. Beaty has not engaged in

substantial gainful work activity since the alleged onset date of disability.  The ALJ determined that Beaty suffers from only three severe impairments– *status post removal of a benign tumor from the proximal thigh, mild proliferative changes at L2-L5 and hypertension*– but considered individually and in combination, they did not meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Appendix 1 to Subpart P.  He deemed "not credible" Beaty's allegations of pain and functional limitations.  The ALJ determined that he was unable to perform his past relevant work but retained the residual functional capacity ("RFC") to perform other jobs which exist in significant numbers in the national economy.  Accordingly, the ALJ concluded that Beaty is not disabled under the Social Security Act.[1]

## III.  ISSUES

Beaty specifies four issues for this judicial review:

1.    The ALJ failed to properly evaluate Mr. Beaty's claim for benefits under Listing 12.05(B) and (C);[2]

2.    The ALJ failed to properly consider the combination of the Plaintiff's impairments;

3.    The ALJ failed to follow the "slight abnormality" standard in finding that many of the Plaintiff's impairments are non-severe; and

4.    The ALJ failed to properly develop Mr. Beaty's claim for benefits.[3]

---

[1]R. 24-25. The ALJ's disability analysis followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520 and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[2]While this specified issue challenges the ALJ's step-three determination, it appears that Beaty did not present this contention to the ALJ but submitted it instead only in his requested review to the Appeals Council. (R. 214-217).

[3]Plaintiff's Memorandum Brief ("*Pl.'s Br.*") at 7 (Doc. 18, filed Sept. 16, 2005).

## IV.  DISCUSSION

### A.    Listing §12.05 for Mental Retardation

_____Challenged is the ALJ's step-three determination that Beaty's impairments, singularly or in combination, do not meet or medically equal in severity one set forth in the Listing of Impairments:

> Under the third step, I must determine whether these impairments meet or equal in severity any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  No treating or examining source or medical expert has so concluded.  In addition, I have examined the record, and I find that the evidence does not support such a conclusion.[4]

### _____1.  Listing § 12.05: Burden of Proof

The claimant's  burden of proof for a listed disability includes, as explained in *Zebley v. Sullivan*, 493 U.S. 521, 530 (1990),  specific medical findings to match the medical requirements for the listed impairment:

> Each impairment [in the Listings] is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.[5]

_____As defined in Listing §12.05, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.  The required level of severity for this disorder is met when the requirements in A, B, C, or D are

---

[4]R. 21.

[5]S*ee also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("Diagnosis of a listed impairment is not alone sufficient; the record must contain corroborative medical evidence supported by clinical and laboratory findings."); *Wilkinson on Behalf of Wilkinson v Bowen,* 847 F.2d 660, 662 (11th Cir. 1987) (claimant must present evidence which describes how an impairment has the equivalency of a listed impairment); *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986).

satisfied." Listing §12.05(B) sets a valid verbal, performance, or full scale IQ of 59 or less as its

severity requirement. Listing §12.05(C) sets these severity requirements:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other
> mental impairment imposing an additional and significant work-related limitation of
> function.

The parties' dispute focuses only on the threshold prong of a valid IQ score for both Listing

§12.05(B) and §12.05(C). Because the court concludes that Beaty has not provided a valid IQ score

within the requisite listing range, it declines any analysis on the second prong for presumptive

disability under §12.05(C).

### _____2.    *Analysis*

_____As support for his claim of presumptive disability for mental retardation under Listing

§12.05(B), Beaty points to his February 2, 2004, psychological evaluation by Dr. David C. Ghostley,

who assessed his full scale IQ of 53, performance IQ of 57 and verbal IQ of 57. Beaty relies on these

same IQ scores as support for his claim of presumptive disability for mental retardation under Listing

§12.05(C). The Commissioner responds that "based on the lack of any valid IQ scores meeting the

listing criteria, the ALJ properly found that Plaintiff did not meet Listing 12.05(B) or (C)."[6] The

court agrees.

Beaty's IQ scores would place him in the mild range of mental retardation. Dr. Ghostley

diagnosed him, however, with borderline intellectual functioning, and explained:

> [T]hese test results are considered invalid because Mr. Beaty did not appear
> motivated to perform well. Furthermore, his presentation-style is inconsistent with
> measured functioning in the Mild Range of Mental Retardation. Therefore, these

---

[6]Memorandum in Support of Commissioner's Decision ("*Def.'s Br.*") at 5 (Doc. 19, filed Oct.
17, 2005).

results do not accurately reflect his level of intellectual ability.[7]

Beaty challenges Dr. Ghostley's assessment on his intelligence and the validity of his IQ scores. He finds the examining psychological consultant's opinions inconsistent with: (1) Dr. Ghostley's notation of Beaty's cooperation during testing; (2) the lack of "scatter" in his sub-test scores; (3) lay witness statements on his enrollment in special education classes and difficulty reading and writing; and (4) his past work as a garbage collector and roofing helper. "Because of the inconsistencies in Dr. Ghostley's report", Beaty argues that "the ultimate conclusions should be afforded little weight".[8]

Beaty has failed to demonstrate how his cooperation during the psychological evaluation is inconsistent with the doctor's determination that Beaty's IQ scores were invalid. Despite Beaty's cooperation during testing, Dr. Ghostley noted that he did not appear fully motivated to perform on intelligence, memory, and personality testing.[9] Also, Beaty has not provided any authority for his contention that the lack of scatter in his sub-test scores conflicts with Dr. Ghostley's opinion on the validity of his IQ scores.

Regardless of the veracity of witness statements on his enrollment in special education courses and difficulty reading and writing, they do not qualify as sufficient medical findings to meet his burden of proof for a listed disability. *See e.g., Zebley v. Sullivan*, 493 U.S. 521, 530 (1990); *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *Wilkinson on Behalf of Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987); *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986). With respect to

-------------------

[7]R. 210.

[8]*Pl.'s Br.* at 9-10.

[9]R. 211.

Beaty's contention that Dr. Ghostley's opinion is not supported by his past work history in "low-end unskilled jobs", Beaty's past history alone presents no basis for a finding of presumptive disability under Listing §12.05 for mental retardation.  As this court emphasized in a similar context:

> Taking issue with only one of these several evidentiary facts– his employment history as an unskilled farm laborer for twenty-two years – Stallworth argues, in reliance on *Durham v. Apfel,* 34 F.Supp.2d 1373 (N.D. Ga. 1998): "[t]his is precisely the sort of work history that is commensurate with mild mental retardation." [ ].  *This Court is reticent to embrace any opinion that a claimant's decades-long toil in farm labor, or any other kind of unskilled job – is symptomatic of mild mental retardation,* and close scrutiny of *Durham* reveals no justification for any such interpretation.

*Stallworth v. Barnhart*, No. 2:03-cv-00619 (M.D. Ala. Feb. 5, 2004), *aff'd per curium*, 125 Fed. Appx. 270 (11th Cir. 2004). (emphasis supplied).

Substantial evidence supports the ALJ's step-three determination based upon the lack of valid IQ scores within the requisite range.  The ALJ credited Dr. Ghostley's opinion that Beaty's IQ scores were invalid.  The ALJ's adverse assessment of Beaty's claimed Listing-level mental retardation is also buttressed by the expert testimony of by Dr. Nancy L. Sack, a clinical psychologist who reviewed the medical evidence of record.[10]  The ALJ is allowed some leeway to evaluate other evidence when determining the validity of an IQ score.  *See Lowery v. Sullivan*, 979 F. 2d 835, 837 (11th Cir. 1992).

In his evaluation of the disputed IQ scores, Beaty merely attempts to weigh the evidence and draw his own conclusions about the intelligence testing administered by Dr. Ghostley in conjunction with other evidence in the record.  While Beaty may disagree with the manner in which the ALJ took account of the relevant evidence, the court cannot re-weigh the evidence.  *Sewell v. Bowen*, 792 F. 2d 1065, 1067 (11th Cir. 1986).  Nor can the court decide the facts anew or substitute its judgment for that of the ALJ.  *See Phillips v. Barnhart*, 357 F. 3d 1232, 1240 n. 8 (11th Cir. 2004).  The evidence

---

[10]R.22, 257.

credibly established that Beaty had no valid IQ score within the requisite range.  Because Beaty did not sustain his burden of proving disability by presenting evidence consistent with Listing §12.05(B) or (C), *Wilkinson on Behalf of Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir. 1987),  remand is not warranted.

### B.    Consideration of Combination of Impairments

Beaty contends that the ALJ "merely listed the impairments that he determined to be 'not severe'" but failed to consider the combined effects of all of his impairments.[11]   Beaty's contention warrants short shrift as it is simply not supported on this evidentiary record.

It is well established that the ALJ, in making a disability determination, must consider the combined effects of all impairments. *See Wilson v. Barnhart*, 284 F. 3d 1219, 1224-25 (11th Cir. 2002); *Jones v. Dept. of Health & Human Servs.*, 941 F. 2d 1529, 1533 (11th Cir. 1991). If the claimant alleges multiple impairments, the claimant may be found disabled even though no single impairment is considered disabling. *Walker v. Bowen*, 826 F. 2d 996 (11th Cir. 1987).  The ALJ properly considered Beaty's complaints of disabling right shoulder pain, atopic dermatitis, difficulty hearing from his left ear, GERD, depression and learning disorder and deemed each not severe.  The opinion specifies his consideration of Beaty's impairments both individually and in combination.[12]  This language has been held sufficient to meet the requirement of considering impairments in combination.  *See Reeves v. Bowen*, 841 F. 2d 383 (11th Cir. 1988); *Gibbs v. Barnhart*, 156 Fed. Appx. 243 (11th Cir. 2005); *McCray v. Massanari*, 175 F. Supp. 2d 1329 (M.D. Ala. 2001).  Consequently, remand is not dictated.

---

[11]*Pl.'s Br.* at 11.

[12]The ALJ  "f[ound] that the claimant's severe and not severe impairments, considered singularly and in combination, [were] not of listing-level severity." (R. 22).

C.      Assessment of Severity of Impairments

Beaty challenges the ALJ's step-two determination that his alleged gastroesophageal reflux disorder ("GERD"), right shoulder pain, left ear hearing difficulty, depression, and learning disorder were all non-severe impairments.[13] Beaty contends that the record instead "reflects that the...impairments have more than a 'slight' effect on [his] ability to sustain gainful employment."[14]

At step two of the five-step sequential evaluation process, the ALJ must consider the medical severity of the claimant's impairments. The severity step is a "threshold inquiry" which allows only claims based on the most trivial impairment to be rejected. *McDaniel v. Bowen*, 800 F. 2d 1026, 1031 (11th Cir. 1986). A claimant bears a "mild" burden of proving he has a severe impairment within the meaning of the Social Security Act.  An impairment or combination of impairments is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1521(a).  Basic work activities are defined as those abilities and aptitudes necessary to perform most jobs.  *See* 20 C.F.R. §404.1521(b).[15] An impairment is not

─────────────────────

[13]The ALJ considered Beaty's alleged impairments and determined, *inter alia*:

> Additionally, the claimant alleges several other problems including right shoulder pain, atopic dermatitis, difficulty hearing from left ear, gastroesophageal reflux disorder, depression, and learning disorder.  Having considered the evidence, I find that these complaints are not supported by objective findings, which demonstrated any impact on the claimant's ability to work and thus, are not severe impairments.

R. 20.  Unchallenged is the ALJ's finding of  atopic dermatitis as a  non-severe impairment.

[14]*Pl.'s Br.* at 12, citing R. 139-40; 148-52; 169-87; 188-91.

[15]Examples of these include: (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capabilities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5)
(continued...)

severe only if the abnormality is so slight and its effect so minimal that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F. 2d at 1031; *Davis v. Barnhart*, No. 06-11021, 2006 U.S. App. LEXIS 18442 (11th Cir. July 21, 2006).  The severe impairment must last or be expected to last for at least twelve months.  *Barnhart v. Walton*, 535 U.S. 212, 216 (2002).  Therefore, a claimant  need only show that his impairment is not so slight and its effect is not so minimal.  *McDaniel v. Bowen*, 800 F. 2d at 1031. Guided by these standards, the court proceeds to discuss whether the ALJ's step-two determination is supported by substantial evidence and proper application of the relevant law.

        1.     *GERD, right shoulder pain and left ear hearing difficulty*

      The ALJ considered Beaty's  GERD,  right shoulder pain and left ear hearing difficulty.  He articulated his reasons for finding all three  not severe:

> The medical evidence reflects the claimant presented to the Newton Family Health Center on December 2, 2002, complaining of some reflux symptoms over the past several weeks no relieved by any over the counter medications or adjustment to diet. He was started on Zantac 150mgs twice a day and instructed in regard to lifestyle modification.  On March 27, 2003, the claimant returned and did not mention having may [sic] more problems with reflux symptoms.
>
> The claimant was treated for right shoulder pain on July 8, 2003 and prescribed Tylenol arthritis for two to three weeks. On July 22, 2003, the claimant returned and did not mention having any more problems with his right shoulder.
>
> ***
> Therefore, I cannot readily find that the claimant's reflux symptoms, right shoulder condition...were severe physical impairments, which lasted or were expected to last for a period of twelve continuous months.

_____

[15](...continued)
Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting. *See* 20 C.F.R. §404.1521(b).

The claimant alleges difficulty hearing from his left ear; however, this condition has never been diagnosed or medically shown to have an etiology.[16]

Scrutiny of the record supports the ALJ's step-two determination that Beaty's GERD and shoulder pain constitute non-severe impairments. After Beaty's initial complaint of reflux symptoms and right shoulder pain and treatment with medication for each impairment, the record does not disclose subsequent complaints or treatment of either GERD or right shoulder pain.[17] Substantial evidence also supports the ALJ's finding of no severe hearing difficulty. Review of the records cited by Beaty do not disclose at all any hearing difficulty. Furthermore, the record is void of any complaint, diagnosis or treatment for hearing difficulty or loss.

### 2.    Depression

The ALJ also deemed Beaty's depression as a non-severe impairment:

On January 28, 2004, the director at SpectraCare reported that the claimant's DSM IV diagnosis was major depressive disorder, single episode, *moderate*. On February 2, 2004, Dr. David C. Ghostley noted the claimant was *mildly* depressed with irritability. He was not taking psychotrophic medications (Exhibits 11F and 12F). Thus, the claimant's *moderate to mild* depression is "not severe".[18]

Scrutiny of the record compels this court to conclude that substantial evidence supports the ALJ's finding.

_____ Records from SpectraCare corroborate Beaty's testimony of attendance in counseling, since

_____

[16]R. 20-21.

[17]R. 169, 171, 175, 178.

[18]R. 21.

11

2003 at SpectraCare.[19]  Prior to his treating physician's prescription for an anti-depressant in March

or April 2004, Beaty was not taking any prescribed medication for his depression.[20]

On the mental status examination, Dr. Ghostley found that Beaty's "impairments in

functioning appear to be a combination of both physical and mental factors.  However, the physical

factors largely outweigh the mental impairments."  The consultative examiner diagnosed major

depressive disorder, single episode, mild.  Noting Beaty's report of attendance at SpectraCare for two

hours every month and his lack of any prescribed anti-depressant, Dr. Ghostley opined that "[f]rom

a psychiatric standpoint, Mr. Beaty's prognosis is considered good with recommended treatment" of

psychiatric consultation "to address his depressive symptoms".  Dr. Ghostley opined that "[w]ith

approximately two months of anti-depressant therapy," Beaty's "ability to understand and remember

instructions, as well as to appropriately respond to supervisors, co-workers, and work pressures in a

work setting would likely be unimpaired".[21]

Other evidence  supports the ALJ's finding that Beaty's depression is not severe.  Based upon

her review of the record, testifying mental health expert, Dr. Nancy Sack identified  Beaty's *major

depressive disorder, single, moderate* diagnosed by SpectraCare and his  *major depressive disorder, single,

mild* and *borderline intellectual functioning diagnosed* by Dr. Ghostley.  Dr. Sack  opined that Beaty had

a mild limitation in responding appropriately to customers or other members of the general public;

a mild limitation in responding appropriately to supervision; a mild limitation in responding

---

[19]R. 188-191, 251.

[20]R. 128, 242.

[21]R. 210 - 212.

appropriately to coworkers; a mild limitation in responding to customary work pressures; no limitation in using judgment in simple one or two-step work-related decisions or understanding, remembering, and carrying out simple one and two-step instructions; a moderate limitation in using judgment in detailed or complex work-related decisions and in understanding, remembering, and carrying out detailed or complex instructions; and a mild limitation in maintaining attention, concentration, or pace for periods of at least two hours.[22]  She further opined that "although [Beaty] does have some symptoms, they don't seem to be significant enough...to severely impact his ability to work."[23]  Substantial evidence supports the ALJ's  conclusion that Beaty's alleged depression caused no more than a minimal impact on his ability to perform basic work activities.

               3.     *Learning disorder*

        Finding Beaty's alleged learning disorder not severe, the ALJ explained:

> On February 2, 2004, the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III) was administered to the claimant; however, the results were considered invalid, as he did not appear motivated to perform well.  Furthermore, his presentation-style was inconsistent with measured functioning.  Therefore, the results did not accurately reflect his level of intellectual functioning (Exhibit 11F).

> On February 2, 2004, the Wechsler Memory Scale-Third Edition (WMS-III) was administered to the claimant; however, as with the intelligence testing, the claimant did not appear fully motivated to perform well.  As such, the results were considered invalid (Exhbit 11F).

> On February 2, 2004, the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) was administered to the claimant; however, the results revealed an invalid, un-

---

[22]R. 257-258.  The expert rated the level of limitation as none; mild; moderate; marked; or extreme. The ALJ defined none as no limitation; mild as no more than slight or minimal; moderate as affects but does not preclude the ability to function; marked as seriously interferes with ability to function; and extreme as no useful functioning. (R. 257).

[23]R. 259.

13

interpretable profile.  Possible reasons  for the invalid profile included, possible recording errors, random responding, intentional exaggeration of symptoms, or malingering (Exhibit 11F).[24]

None of the records cited by Beaty reference at all any alleged learning disorder.  As properly noted by the Commissioner, "there is no valid medical evidence in the record that Plaintiff had a learning disorder."[25]  The ALJ documented the results of intelligence testing obtained during the psychological evaluation administered by Dr. Ghostley in February 2004.

Dr. Ghostley noted Beaty's report of his completion of "the 9th or 10th grade while enrolled in special education classes for learning disordered students at a school in Ozark, Alabama."[26]  The evidentiary record does not contain school records, including any necessary intelligence testing, but instead contains only lay witness statements to document both his enrollment in special education classes and his difficulty with reading and writing.[27]  Dr. Ghostely diagnosed borderline intellectual functioning after finding IQ scores indicative of mild mental retardation invalid due to lack of motivation to perform well.[28]

_____In sum, substantial evidence supports the ALJ's step-two determination on the severity of Beaty's alleged impairments.  Therefore, remand is not warranted on this claimed error.

_____

[24]R. 20-21 (emphasis in original).

[25]*Def.'s Br.* at 8.

[26]R. 209.

[27]R. 121-126.

[28]R. 210-211.

14

D.      Duty to Develop the Record

1.      *Failure to Obtain Consultative Evaluations*

The court finds no abuse of discretion in the ALJ's failure to secure a consultative examination of Beaty's alleged hearing impairment or in his failure to secure a second consultative examination of Beaty's mental condition. An ALJ does commit "reversible error" if he declines "to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F. 2d 519, 522 n.1 (11th Cir. 1984); *see also* 20 C.F.R. §404.1517 ("If your medical sources cannot or will not give us sufficient medical about your impairment for us to determine whether you are disabled or blind, we may ask to have one or more physical or mental examinations or tests.").

Beaty's contention that the ALJ had insufficient information to make an informed decision regarding his alleged hearing impairment rests solely on his own perceived hearing problems during the administrative hearing. Scrutiny of the hearing transcript simply does not reveal any problem hearing the questions posed. As the Commissioner correctly notes, the ALJ properly considered Beaty's alleged hearing impairment and found that the medical evidence did not reflect any reference to a hearing impairment. The record is simply void of any diagnosis, treatment, or other evidence of a hearing impairment.

Beaty's contention that the ALJ had insufficient information to make an informed decision regarding his mental condition rests solely on his exception to the ALJ's deference to Dr. Ghostley's opinion that Beaty's test results obtained during his psychological evaluation were invalid. The ALJ concluded that Beaty's depression constitutes a non-severe impairment. He also determined that Beaty's alleged learning disorder constitutes a non-severe impairment. Additionally, the ALJ clearly

15

considered Dr. Ghostley's psychological evaluation, along with other pertinent evidence of record, including records from SpectraCare for mental health treatment and expert testimony by Dr. Nancy Sack, a clinical psychologist.   Beaty makes no credible showing for the inadequacy of all this evidence alone to ground an informed decision by the ALJ.   The court readily finds the evidence substantial sufficiently to support the ALJ's non-disability determination.   *See Haywood v. Sullivan*, 888 F. 2d 1463, 1472 (5th Cir. 1989) ("The ALJ not required to order consultative examinations unless the plaintiff meets the burden of raising the requisite suspicion that the examination is necessary to discharge the ALJ's responsibility to conduct a full inquiry into the facts."); *see also Gholston v. Barnhart*, 347 F. Supp. 2d 1108, 1115 (M.D. Ala. 2003) (ALJ not required to order a consultative exam unless the record– medical and non-medical– establishes the necessity for such an exam).

### 2.    *Failure to Secure Medical Records*

_____Notwithstanding the ALJ's duty to develop the record fully and fairly, the claimant's burden of proving his disability requires that he produce the substantiating evidence.[29]   The ALJ must

---

[29]*See Brown v. Shalala*, 44 F.3d 931, 934 - 35 (11th Cir. 1995); *Cowart v. Schweiker*, 662 F.2d 731, 735-736 (11th Cir. 1981) (describing the ALJ's duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts").   *See* 20 C.F.R. §404.1512 (a):

> *In general*, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

> *and* 20 C.F.R. §404.1512(c):

(continued...)

develop the claimant's "complete medical history for at least the 12 months preceding the month in which [he] files [his] application unless there is a reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [his] disability began less than 12 months before [the filing of his] application. 20 C.F.R. §404.1512(d); *see also Ellison v. Barnhart*, 355 F. 3d 1272 (11th Cir. 2003).  If the claimant says that his disability began less than 12 months before he filed his application, the ALJ must develop his complete medical history beginning with the month he says his disability began unless he has reason to believe that his disability began earlier. 20 C.F.R. §1512(d)(2).  Courts evaluating the necessity for remand to obtain additional records "are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F. 3d at 935  (internal quotations omitted).

Guided by these standards, the court readily rejects Beaty's contention that the ALJ committed reversible error by failing  to order updated medical records from his mental health provider, SpectraCare.   Beaty offers no explanation for his own failure to submit additional records from SpectraCare or other relevant records for treatment despite the opportunity afforded.[30]   Nor does he demonstrate the necessity of remand due to  unfair prejudice resulting from the ALJ's failure to obtain these records.  While "[t]he lack of medical and vocational documentation supporting an

---

[29](...continued)
> *Your responsibility*.  You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.  You must provide evidence showing how your impairment(s) affects your functioning during the time you say that you are disabled, and any other information that we need to decide your case.

[30]Informed by Beaty's non-attorney representative of Beaty's current treatment with SpectraCare,  the ALJ postponed the administrative hearing to afford Beaty time to submit updated records from SpectraCare.  (R. 235-236).

applicant's allegations of disability is undoubtedly prejudicial to a claim for benefits," this:

> do[es] not mean that a remand is warranted any time a claimant alleges that the ALJ neglected to complete the record. The likelihood of unfair prejudice to a claimant may arise, however, where...the evidentiary gap involves recent medical treatment which the claimant contends supports her allegations of disability, or the receipt of vocational services.

*Brown*, 44 F. 3d at 936, n. 9.

Not only did the record contain records from SpectraCare,[31] it also included substantial evidence relevant to the status of Beaty's mental health and resulting functional limitations: a consultative psychological examination by Dr. Ghostley in February 2004, and Dr. Sack's expert psychological testimony. In sum, the record in its entirety does not disclose the type of evidentiary gap in the mental health treatment records which dictates remand in order to obtain and evaluate the records in controversy.

## V.  CONCLUSION

Based on the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate judgment is entered herewith.

Done this 25th day of August, 2006.

**/s/ Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE

---

[31]Included in the record is a January 28, 2003 treatment plan, a progress note and a treatment plan both dated January 28, 2004 progress note from SpectraCare. (R. 188-191, 213).